TORBERT v. SMITH'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS—ATTORNEYS' FEES—ORAL CON-
   TRACTS—EVIDENCE—SUFFICIENCY.
   In claim against estate of deceased wife, based on her oral
   contract to pay plaintiffs, as attorneys, 40 per cent. of any
   saving effected in reduction of Federal taxes claimed by the
   government, one-half of which was payable by her and the
   other one-half by her deceased husband's estate, of which she
   was sole beneficiary, evidence *held*, sufficient to establish said
   contract.

2. SAME—CONTRACTS—CONSIDERATION—ATTORNEYS' FEES.
   Under such circumstances, wife could bind herself to pay the
   whole charge for such services, there was ample consideration,
   and claim is allowed in full amount against her estate.
   WIEST, POTTER, and McDONALD, JJ., concur in part; favoring
   allowance of only one-half of said claim against wife's estate.

Appeal from Wayne; George (Fred W.), J., presiding. Submitted June 2, 1931. (Docket No. 6, Calendar No. 35,654.) Decided December 8, 1931.

Hugh L. Torbert and Hugh G. Allerton, copartners as Torbert & Allerton, presented their claim against the estate of Hattie B. Smith, deceased, for professional legal services under an oral contract. From disallowance of the claim, plaintiffs appealed to the circuit court. Judgment for defendant. Plaintiffs appeal. Reversed.

*Henry C. Bogle,* for plaintiffs.

*Lightner, Oxtoby, Hanley, Crawford & Dodd,* for defendant.

MCDONALD, J. This is an appeal from a judgment of the circuit court disallowing a claim for legal services made by the plaintiffs against the estate of Hattie B. Smith, deceased.

Hattie B. Smith was the wife of James W. Smith. Together they owned and operated a trucking business in the city of Detroit known as the Smith Trucking Company, a copartnership. James W. Smith died October 17, 1926. Hugh L. Torbert, one of the plaintiffs, was named executor of the estate. Sometime in 1927, before Mrs. Smith died, notice was received that the U. S. government claimed a deficiency in the income taxes assessed against the Smith Trucking Company for the years 1923, 1924, 1925, and 1926. It is claimed by the plaintiffs that Mrs. Smith, who was considerably disturbed over the demands of the government, made an oral agreement with them by which they were employed to secure, if possible, a reduction in the taxes; that if they were successful she would pay them for their services 40 per cent. of the net amount of the reduction; that they fully performed their part of the contract and effected a total reduction in the taxes of $16,231.24.

In the meantime, Mrs. Smith died and plaintiffs filed their claim against her estate for $6,492.30. It was denied by the commissioners. The hearing on appeal was before the circuit judge without a jury. It was decided that the evidence did not establish the agreement claimed; that the agreement if established would be without consideration and therefore not valid or enforceable, and that Mr. Torbert as executor had petitioned for and received extra compensation for the same services from the estate of James W. Smith, deceased. On these findings, judgment was entered denying the claim.

We will discuss these findings in the order presented by the briefs.

1. Was the agreement established by the evidence?

·Death has sealed the lips of Mrs. Smith and the statute relative to testimony as to matters equally within the knowledge of the deceased prohibits Mr. Torbert from testifying concerning his contract with her (3 Comp. Laws 1929, § 14219). In similar circumstances we have said it is not to be expected that the contract will be as definitely established as it would be if the parties to it could testify. But in this case we think there is sufficient evidence from parties competent to testify showing an agreement as claimed by the plaintiffs. We refer to the testimony of Mr. Moore and Mrs. Fader.

Mr. Moore, a long-time acquaintance and friend of Mrs. Smith, testified to a conversation with her concerning the contract. He said:

"We were talking about Mr. Torbert making the savings on the income tax. She figured that he would save around anywhere from $60,000 to $100,000. I said 'That would be fine,' and she said, 'Well, I will have to pay 50 per cent. of it,' and I

said, 'Well even at that it is a good bet.' That is all there was to it.''

He further testified to a conversation between Mrs. Smith and Mr. Torbert at the latter's office:

"Mrs. Smith said, 'Mr. Torbert, I think paying you 50 per cent. of the savings on the income tax is too much,' and Mr. Torbert said, 'Mrs. Smith, what do you figure you should pay me,' and she says, 'I think if I pay you 40 per cent. Mr. Torbert, it would be plenty,' and he said, 'It is satisfactory to me if it is satisfactory to you.'"

Helen Fader, a niece of Mrs. Smith, the executrix of her estate and the chief beneficiary in her will, called by the plaintiffs as an adverse witness, testified that Mrs. Smith told her:

"That she had consented or agreed to an arrangement whereby Mr. Torbert was to get 40 per cent. of the savings."

There being nothing to the contrary, this evidence is amply sufficient to establish the agreement.

2. Is the agreement valid and enforceable against the estate of Hattie B. Smith?

In discussing this question, the trial judge said:

"It is undisputed that at the time of making the alleged contract, Hugh L. Torbert was the qualified and acting executor of James W. Smith, and is still so acting. It is likewise undisputed on the record that all of the income taxes in question had been assessed against James W. Smith, and that his estate and his estate alone was liable for the payment of such taxes. It seems clear that any reduction that could be had could only be accomplished through action taken by the executor or personal representative of James W. Smith. Since Hugh L. Torbert was executor at the time of the alleged contract, and

since it would seem clearly his duty as executor to protect such rights as the estate might have in relation to securing tax refunds, I am of the opinion that no consideration existed to support a promise on the part of Hattie B. Smith personally to pay for such services. The rule is elementary that no consideration is furnished where one does or agrees to do only that which he is legally required or obligated to do. To say that a different result should be reached because Hattie B. Smith is the beneficiary under the will of James W. Smith and is therefore beneficially interested in the result, does not follow.''

The court would be right in his conclusion if the only interest Hattie B. Smith had was as beneficiary in the will or if the estate of James W. Smith alone were liable for the taxes. But as we read the record he is mistaken as to the facts. Only one-half of the trucking business and the property was administered by the executor as belonging to the estate of James W. Smith. The other half belonged to Mrs. Smith. So, apart from her interest as beneficiary under the will, she had an absolute interest in her own right in one-half of all the property against which the tax was assessed. The estate of James W. Smith could rightfully insist that she should pay one-half of the tax. In making final settlement of the taxes, the government divided the income equally between the two estates. It is true that while her husband was living Mrs. Smith never filed a separate return for her half of the income. The returns were joint returns of husband and wife and included the income taxable to each of them. Such returns are permitted under the income tax law, although they could be made separately (26 USCA § 964). It must be conceded that Mrs. Smith was liable for one-half of the taxes, and if not paid they would become

a lien against property held by her independently. Mr. Torbert, as executor of Mr. Smith's estate, owed her no duty in respect to her taxes. She did not represent his estate in any capacity, but was free to contract with his executor in reference to her separate business. Her liability for one-half of the taxes was sufficient consideration for such a contract. As to her, it was valid and enforceable. The benefits she received individually were one-half of the reduction in taxes effected by the plaintiffs. To that extent her estate is liable.

3. Does the fact that Mr. Torbert, as executor, petitioned for and was allowed extra compensation from the estate of James W. Smith for services in relation to the same taxes bar plaintiffs' recovery under their agreement with Hattie B. Smith?

The record shows that no claim of the plaintiffs for legal services in relation to these taxes has been allowed or is pending in the estate of James W. Smith. There was an allowance made by the probate court to the executor for extra compensation, but, as that did not include payment for legal services, it has no bearing on the issue here involved. The probate court has authority to allow an executor reasonable compensation including necessary attorney fees for services in administering an estate. But any claim which the plaintiffs may have in the James W. Smith estate is separate and distinct from the claim here. Of course they cannot realize twice on the same claim and are not attempting to do so. Hattie B. Smith, by reason of her contract, became personally bound for the payment to the plaintiffs of 40 per cent. of one-half of the reduction effected in the additional taxes claimed by the government. To that extent the plaintiffs' claim against her estate should be allowed. The cause should be remanded

to the circuit court for the entry of a judgment in their favor in the sum of $3,246.15 with interest at five per cent. from the date the claim matured. The plaintiffs will have costs.

WIEST and POTTER, JJ., concurred with McDONALD, J.

NORTH, J. I concur with Mr. Justice McDONALD in holding that the testimony establishes the "agreement as claimed by the plaintiffs;" but I am also of the opinion it necessarily follows that plaintiffs should recover their full compensation from Mrs. Smith instead of one-half of it. This is the only fair conclusion that can be drawn from the declarations of Mrs. Smith quoted in Mr. Justice McDONALD's opinion. In making her final bargain for plaintiffs' services Mrs. Smith said to one of them: "I think if I pay you 40 per cent., Mr. Torbert, it would be plenty." Her proposition was accepted by plaintiffs. One-half of the income tax to be paid to the government was a direct obligation of and charged against Mrs. Smith; the other half was against Mr. Smith's estate, of which Mrs. Smith was the sole beneficiary. Mr. Smith had died before Mrs. Smith made her contract with plaintiffs. Subject to payment of debts and expenses of administration, she was then the sole beneficial owner of the property that constituted Mr. Smith's estate, although technically title to the personalty had not yet vested in her. Plaintiffs effected a saving of $16,231.24, all of which inured directly to Mrs. Smith's benefit. Under such circumstances, she could and did bind herself to pay the whole charge for plaintiffs' services. There was ample consideration for this agreement on her part. Plaintiffs'

claim against Mrs. Smith's estate should be allowed for the full amount, $6,492.50, with interest at five per cent. from the date their claim was filed. The circuit court will so order. Costs to appellants.

BUTZEL, C. J., and CLARK, SHARPE, and FEAD, JJ., concurred with NORTH, J.